IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ABBELLA GROUP HEALTHTECH,** | * | |
| **LLC d/b/a ABBELLA MEDICAL** | * | |
| **STAFFING,** | * | |
| | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No: 1:24-cv-00331-JMC |
| **QUALIVIS, LLC, et al.,** | | |
| | * | |
| *Defendants.* | | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff, Abbella Group Healthtech, LLC, doing business as Abbella Medical Staffing, filed the present lawsuit against Defendants, Qualivis, LLC ("Qualivis") and Aya Healthcare, Inc. ("Aya Healthcare"), on February 1, 2024, alleging breach of contract (Count I) and unjust enrichment (Count II). (ECF No. 1). Those Defendants filed a motion to dismiss Plaintiff's Complaint on April 5, 2024, which was denied without prejudice because Plaintiff filed an Amended Complaint on April 19, 2024. (ECF Nos. 19, 25, 27); *see also* Fed. R. Civ. P. 15. Plaintiff's now-operative Amended Complaint adds Defendant Chesapeake Registry Program, Inc. ("CRP") as a Defendant under the same causes of action. (ECF No. 25). Presently before the Court is Defendants' collective Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 28). The motion is fully briefed (ECF Nos. 36, 39) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendants' motion will be granted in part and denied in part with leave to amend.

## I. BACKGROUND

Plaintiff "is a Baltimore-based medical staffing agency specializing in placing travel nurses and other medical health professionals in facilities requiring additional medical staff." (ECF No. 25 at 3).[1] Defendants Qualivis and Aya Healthcare are purportedly "out-of-state prime contractors" and Defendant Qualivis acquired Defendant CRP. *Id.* Defendant Qualivis is a wholly owned subsidiary of Defendant Aya Healthcare. *Id.* at 4. Defendant CRP "is a Maryland corporation created by the Maryland Hospital Association in 2004 to assist hospitals and health systems with staffing through nursing agencies such as [Plaintiff]." *Id.* at 5.

During the COVID-19 pandemic, the State of Maryland Department of Health ("MDH") "required the assistance" of "travelling medical personnel to staff its COVID-19 response initiatives." *Id.* at 3. A "prime contract" was entered into on or about April 30, 2020, between CRP and MDH "when MDH entered into an 8-month . . . contract (the 'MDH Emergency Contract') with CRP . . . pursuant to which CRP was to provide an online platform for health care providers, particularly nursing home facilities, private hospitals, and State hospitals, to request temporary additional staffing from various staffing agencies to cover staffing shortages due to COVID-19 outbreaks." *Id.* at 3–4. On or about July 1, 2020, MDH and CRP modified the MDH Emergency Contract by extending the contract amount, extending its term to March 21, 2021, "and expanding the scope to include staffing at prisons and COVID test sites." *Id.* at 4. Then on or about December 7, 2020, MDH and CRP purportedly modified the MDH Emergency Contract again, increasing the contract amount and providing for "additional funding for increased staffing at increased

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts and construe[s] them in the light most favorable to the plaintiff." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).

2

competitive rates due to the decreased availability of short-term nursing staff for Maryland's prison hospital tents and statewide testing sites." *Id.*  MDH and CRP further modified the MDH Emergency Contract on or about February 8, 2021, to extend its term to September 30, 2021, "and expanding the scope to include COVID vaccination sites." *Id.*

Defendant Qualivis acquired Defendant CRP on or about March 1, 2021. *Id.*  Then on approximately June 21, 2021, "MDH and CRP (for Qualivis) once again modified the MDH Emergency Contract" to include an increased contract amount and "extending the term to June 30, 2022." *Id.*  "When MDH reported the June 21, 2021[,] contract modification to the Maryland Board of Public Works, it stated that '[t]his contract was originally awarded to [CRP], which was acquired by Qualivis, LLC.  Qualivis, LLC, has accepted the contract terms via novation agreement.'" *Id.*

Regarding Plaintiff's involvement in this case, Plaintiff entered into a "Personnel Agreement" with CRP on April 1, 2017, which "ran until June 30, 2021." *Id.* at 5.  Then on April 14, 2020, Plaintiff and CRP "entered into a Special Emergency Personnel Agreement, with a term running until the Governor of Maryland declared an end to the COVID-10 Emergency Medical Proclamation or when CRP notified [Plaintiff] that the Agreement was terminated." *Id.*  Given these pre-existing contracts between Plaintiff and CRP, Qualivis effectively became Plaintiff's "counter-party" under these agreements when it acquired CRP on or about March 1, 2021. *Id.*

> On April 16, 2021:
>
> Plaintiff and Qualivis also entered into a Subcontracting Agreement for Healthcare Professionals ('Subcontracting Agreement').  The Subcontracting Agreement set general terms for the parties' dealings, but material 'assignment specific terms' were left for future agreement, including facility location, assignment dates, billing rates, etc.  Additionally, for assignments covered by the Subcontracting Agreement, terms and conditions imposed by Qualivis' clients would be set forth in a 'client term sheet,' which would be binding on [Plaintiff] only with its specific agreement.  The Subcontracting Agreement further provided that in the event of a conflict between its terms and the terms of any client term sheet, the client terms sheet shall control.

*Id.* Plaintiff and Qualivis then entered into such a client term sheet on or about March 3, 2022, "setting forth specific terms on which [Plaintiff] would provide COVID-related services under Qualivis' prime contract with the MDH." *Id.*

"Assignment specific terms were set forth in email communications between employees of Aya Healthcare and [Plaintiff] requesting a certain number of medical professionals, including Registered Nurses [] and Licensed Practical Nurses [] to go to COVID-19 testing and vaccination sites across Maryland to prepare vaccines, vaccinate individuals, and observe the sites." *Id.* at 6. Aya Healthcare would include the "number of hours per week required" for the nurses and Plaintiff would "in turn provide the names of [the nurses] who were available to staff the COVID-19 vaccination sites." *Id.* The parties would then communicate regarding start times for the nurses, the COVID-19 testing and vaccination site locations, and payment schedules. *Id.*

According to Plaintiff, "By virtue of Qualivis and Aya Healthcare contacting [Plaintiff] to request medical personnel to staff vaccination sites, the Parties established an obligation requiring Qualivis and Aya Healthcare to pay [Plaintiff] for the services provided." *Id.* Plaintiff posits that it did, in fact, perform its obligations under the parties' agreement(s) by "providing medical professionals to Qualivis and Aya Healthcare to staff the State of Maryland's COVID-19 testing and vaccination sites." *Id.* However, Defendants Qualivis and Aya Healthcare supposedly "made payments irregularly and on a delayed basis," constituting breaches of their purported obligations to pay Plaintiff "for such services in full." *Id.* Plaintiff contends that the "last payment from Qualivis to [Plaintiff] was in May 2023, and Qualivis has made no payments since then, leaving a balance due and owing of more than $5 million." *Id.* Plaintiff "continued to provide services to Defendants" despite Defendants' alleged failure to make timely payments "because of the urgency of the COVID-19 emergency and [Plaintiff's] ongoing contractual relationship with Qualivis and

4

Aya Healthcare." *Id.* Plaintiff also affirms that "All conditions precedent to the filing of this action have occurred or been performed." *Id.* at 7.

## II. LEGAL STANDARD

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

"If the court considers matters outside of the pleadings on a Rule 12(b)(6) motion, it shall treat the motion as one for summary judgment, to be disposed of under Rule 56, and provide all parties a 'reasonable opportunity to present all material made pertinent to such a motion.'" *Nader v. Blair*, No. WDQ-06-2890, 2007 WL 6062652, at *4 (D. Md. Sept. 27, 2007), *aff'd*, 549 F.3d 953

(4th Cir. 2008) (quoting Fed. R. Civ. P. 12(b)).  However, "Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019).  "Those limited circumstances are matters of public record, documents explicitly incorporated into a complaint by reference or attached to the complaint as exhibits, or any document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Shields v. Verizon Md., LLC*, No. 1:23-CV-02932-JMC, 2024 WL 1050996, at *4 (D. Md. Mar. 11, 2024) (quotation omitted).  "A document is integral to the complaint if its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021), *aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022), *and aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022) (quotation omitted).

Here, because Plaintiff relies on the above contracts in bringing this lawsuit and references them consistently throughout its Amended Complaint, the Court deems those contracts to be part of Plaintiff's pleadings and will resolve Defendants' motion with reference to those contracts without converting the motion into one for summary judgment. *See, e.g.*, *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 984 n.1 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004); *NAC Consulting, LLC v. 3Advance, LLC*, 650 F. Supp. 3d 441, 446 (E.D. Va. 2023) ("[A] court can properly consider a contract in evaluating a motion to dismiss a contract dispute.").  "Moreover, where the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail." *Miller*, 224 F. Supp. 2d at 984 n.1 (citing *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

### III.	ANALYSIS

<u>A.  Plaintiff's Amended Complaint is Deficient on Its Face</u>

Defendants first argue that Plaintiff's Amended Complaint is subject to dismissal because Plaintiff (1) did not attach a copy of the relevant contracts thereto, and (2) "fails to specifically identify what contract it alleges to have been breached or even what terms of said contract it alleges to have been breached." (ECF No. 28-1 at 10). This Court previously adopted the notion that "under Maryland law, there is no mandatory requirement that a plaintiff plead the specific contract provision" at issue to survive a motion to dismiss. *Jolly v. Nationwide Agribusiness Ins. Co.*, No. CV ELH-16-00038, 2016 WL 1377400, at *5 (D. Md. Apr. 6, 2016); *see also id.* (collecting cases from this Court for the proposition that "courts in this District have not required plaintiffs to cite precise contractual provisions to sustain a claim for breach of contract under Maryland law").[2] "To the contrary," Maryland's highest court has consistently concluded that "in order to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *Id.* (citing *RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 658 (2010)). However, it is also "well-established in Maryland that a complaint alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *RRC Ne., LLC*, 413 Md. at 655 (quoting *Continental Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 279 Md. 476, 480 (1977)) (emphasis in *Continental*); *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001); *Parillon v. Fremont Inv. & Loan*, No. CIV. L-09-3352, 2010 WL 1328425, at *4 (D. Md. Mar. 25, 2010).

---

[2] Defendants urge the Court to apply Maryland substantive law given the language of the various contracts involved, and Plaintiff's opposition relies on Maryland substantive law. *See* (ECF No. 28-1 at 9 n.2); *see generally* (ECF No. 36). The Court therefore resolves Defendants' motion with reference to Maryland state law, particularly in light of the governing language of the contracts provided by Defendants in connection with their motion.

Regarding Defendants' first argument, Defendants attached to their present motion copies of all contracts implicated by Plaintiff's Amended Complaint. *See generally* (ECF No. 28). Because Defendants have ample notice of and access to those contracts, Plaintiff acknowledges that those documents are authentic, and Defendants provide no clear Maryland authority necessitating dismissal for failing to attach the contracts to Plaintiff's Amended Complaint, Defendants' motion will be denied on that ground. *See* (ECF No. 36 at 7) (acknowledging that the contracts referenced in Plaintiff's Amended Complaint "are now part of the record as Defendants Aya Healthcare and Qualivis attached same to their initial Motion to Dismiss and subsequent Motion to Dismiss the Amended Complaint").

Regarding Defendants' second argument, the Court agrees that Plaintiff's Amended Complaint is overly threadbare. Plaintiff argues in its opposition that it has "stated the terms that were breached, namely failure to abide by the payment terms." (ECF No. 36 at 7). But Plaintiff's Amended Complaint does not provide clear details regarding which precise contract(s) was breached or the facts supporting Defendants' breach of that contract(s) other than asserting that Defendants owe Plaintiff more than $5 million. Put simply, Plaintiff's Amended Complaint alleges a beginning (that there exists a valid contract) and an end (that Defendants owe Plaintiff money) but includes no middle—when or how Defendants breached the contract(s). For instance, Plaintiff's Amended Complaint states that "assignment specific terms" were established between the parties that Defendants breached ultimately leading to an outstanding balance of over $5 million, but provides no indication of those terms, when those terms were established, or, most notably, when and how those terms were breached. *Id.* at 6. These critical missing factual allegations are further muddled by the fact that the Amended Complaint alleges that the parties' contractual relationship began several years ago and that Defendants fulfilled some of their supposed contractual obligations

8

but not others. *See id.* Defendants' motion is therefore granted to the extent that Plaintiff's Amended Complaint fails to provide Defendants adequate notice of the factual grounds supporting its breach of contract claim. *See, e.g.*, *Plan 3, Inc. v. GE Grp. Administrators, Inc.*, No. CV AW-05-1581, 2005 WL 8175573, at *7 (D. Md. Feb. 21, 2005) ("In bringing its claim, [plaintiff] has not attached a single [agreement] to its Complaint, nor has it identified which provisions, of which [agreements], concerning which parties, were allegedly breached. Thus, neither the Court nor [defendant] has any basis for evaluating whether [defendant's actions] constituted breach of its obligations . . . .").

> B. <u>Count I Insufficiently Alleges that Aya Healthcare and/or CRP Breached The Terms of the MDH Emergency Contract, Subcontracting Agreement, Client Term Sheet, Personnel Agreement, or Special Emergency Personnel Agreement</u>

Defendants next argue that any breach of contract claim against Aya Healthcare must fail because Aya Healthcare was not a party to the MDH Emergency Contract. (ECF No. 28-1 at 11). Specifically, Defendants attest that:

> [T]he only agreement believed to be relevant to [Plaintiff's] claims is the MDH Emergency Agreement.[3] Even a cursory review of the MDH Agreement demonstrates that Aya is not a party to it, and [Plaintiff's] Complaint does not allege that it later became one via the novation agreement. Because Aya is neither a signatory to the MDH Emergency Agreement nor identified anywhere within it, Aya owed no contractual obligations to [Plaintiff] . . . To the extent that [Plaintiff] may argue Aya is subject to the MDH Emergency Agreement because it is the parent company of Qualivis, its claim *still* fails . . . Because Qualivis and Aya are two distinct and separate corporations, and Aya is not a party to the contract at issue, Count I should be dismissed as to Aya.

*Id.* at 11–12 (emphasis in original). Plaintiff rebuts that "Staff members and employees of Aya healthcare participated in the formation of the contract with [Plaintiff] by sending email communications to [Plaintiff] requesting medical personnel. Without those emails, which

---

[3] For clarity, the parties' references to the "MDH Emergency Agreement" are one and the same with what the Court abbreviates throughout this Memorandum Opinion and Order as the "MDH Emergency Contract."

9

contained the actual specific terms of the services to be performed, there would be no contract. Thus, Aya Healthcare is a party to the contract with [Plaintiff] and [Plaintiff] properly pled its breach of contract claim." (ECF No. 36 at 7).

Defendants' argument on this issue hinges on Aya Healthcare not being a party to the MDH Emergency Contract. Plaintiff states now in its opposition that "Qualivis and Aya Healthcare were in fact obligated to pay [Plaintiff] for services performed under the Subcontracting Agreement, the Client Term Sheet, and the continuous email communications." (ECF No. 36 at 8). As an initial matter, the Subcontracting Agreement was entered into by only Qualivis and Plaintiff. *See* (ECF No. 28-6 at 2). The Subcontracting Agreement provides that the "assignment specific terms" and the client term sheets between the parties regarding staffing assignments would be set forth at a later date. *Id.* at 2–3. It also states that these separate communications "will be provided by Qualivis" with no explicit reference to Aya Healthcare throughout the entire agreement. *Id.* at 3. Further, the Subcontracting Agreement states unambiguously that Qualivis is obligated to pay for services provided by Plaintiff pursuant to the agreement. *Id.* at 7. Plaintiff has thus failed to plausibly allege that Aya Healthcare violated the Subcontracting Agreement because it provides no facts supporting the notion that Aya Healthcare was a party to or otherwise involved in the formation of the Subcontracting Agreement. The same conclusion applies to Aya Healthcare's purported liability for breaching the client term sheet, which also indicates only that Qualivis and Plaintiff are parties thereto. *See* (ECF No. 28-7). Defendants' motion is thus granted to the extent that Plaintiff has not adequately pled that Aya Healthcare breached the Subcontracting Agreement or any client term sheet(s) to which Plaintiff has not plausibly demonstrated that Aya Healthcare was a party. *See Cecilia Schwaber Tr. Two v. Hartford Acc. & Indem. Co.*, 437 F. Supp. 2d 485, 489 (D. Md. 2006) ("As a general rule, 'a contract cannot be enforced by or against a person who

is not a party to it.'") (quoting *Crane Ice Cream Co. v. Terminal Freezing and Heating Co.*, 147 Md. 588 (1925)).[4]

However, Plaintiff's Amended Complaint does allege that Aya Healthcare and Plaintiff agreed on certain contractual obligations "in email communications between employees of Aya Healthcare and [Plaintiff] requesting a certain number of medical professionals," which "established an obligation requiring Qualivis and Aya Healthcare to pay [Plaintiff] for the services provided." (ECF No. 25 at 6). Taking these allegations at face value, the Court is therefore unwilling to conclude at this stage that Count I should be dismissed against Aya Healthcare to the extent that Plaintiff asserts that Aya Healthcare violated any contractual obligation entered into through those email communications. But to be clear, Plaintiff then runs into the same issue discussed above. Although Plaintiff has plausibly alleged generally that Aya Healthcare breached certain agreements with Plaintiff executed via email communications, Plaintiff's Amended Complaint fails to set forth any details regarding those agreements/communications and how or when Aya Healthcare breached any obligations thereunder. In sum, Plaintiff's Amended Complaint does not set forth sufficient facts plausibly demonstrating that Aya Healthcare violated any agreements between the parties and those claims against Aya Healthcare must be dismissed.

Defendants similarly contend that Plaintiff cannot make out a breach of contract claim against CRP for allegedly violating the Subcontracting Agreement or any client term sheet. (ECF No. 41 at 5–6). Relevant to this issue, Plaintiff's opposition asserts that "[i]n the pertinent contracts between [Plaintiff] and CRP, later Qualivis and Aya Healthcare, Qualivis and Aya Healthcare were

---

[4] Plaintiff also concedes in its opposition that Plaintiff was not a party to the MDH Emergency Contract between MDH and CRP (later acquired by Qualivis) and provides no argument regarding whether Plaintiff is nevertheless able to enforce the MDH Emergency Contract which it was not a party to. *See* (ECF No. 36 at 7). Plaintiff's Amended Complaint therefore also fails to plausibly allege any avenue through which Plaintiff may seek redress for any alleged violations of the MDH Emergency Contract.

11

required to pay [Plaintiff] for services performed." (ECF No. 36 at 7). The Amended Complaint does not shed light on what exactly those "pertinent contracts" are or how CRP specifically breached any terms of those contracts. Plaintiff's Amended Complaint (and opposition) sets forth that Qualivis and Aya Healthcare—rather than CRP—breached the terms of the Subcontracting Agreement and/or subsequent client term sheets and email communications sent pursuant to the Subcontracting Agreement without explicitly connecting CRP to any such breaches. Additionally, the only allegations in Plaintiff's Amended Complaint regarding a clear contractual relationship between Plaintiff and CRP involve the Personnel Agreement from April 2017 and the Special Emergency Personnel Agreement from April 2020, and it is unclear given the above deficiencies whether Plaintiff is asserting that CRP breached those agreements specifically, and if so, how. Count I therefore also fails to adequately plead CRP's liability for breach of contract given that it does not clearly identify which contract(s) CRP has breached or how, requiring dismissal.

> C. <u>The Court Will Not Dismiss Plaintiff's Amended Complaint For Failure to Plead Satisfaction of Conditions Precedent</u>

Defendants next argue that Plaintiff's "breach of contract claim against CRP and Qualivis" also "fails because [Plaintiff] cannot demonstrate it is entitled to any payment from CRP or Qualivis." (ECF No. 28-1 at 13). Defendants rely on the language of the MDH Emergency Contract to assert that, under the MDH Emergency Contract and its amendments: (1) "CRP was only obligated to pay for [Plaintiff's] services to the extent such services were approved and paid for by MDH"; and (2) "CRP had 'no responsibility or liability for any payment due to [Plaintiff] under this Agreement or any other unrelated agreement . . . unless and until it receive[d] payment' from MDH." (ECF No. 28-1 at 13–14) (quoting the MDH Emergency Contract February 2021 modification, ECF No. 28-4 at 6). In turn, Defendants argue that Plaintiff's Amended Complaint

must be dismissed with respect to any purported violation of the MDH Emergency Contract because Plaintiff's general allegation regarding satisfying all conditions precedent is insufficient. *Id.*

Plaintiff clarifies in its opposition that "the MDH Emergency Agreement was not between [Plaintiff] and CRP (later Qualivis). Qualivis and Aya Healthcare were in fact obligated to pay [Plaintiff] for services performed under the Subcontracting Agreement, the Client Term Sheet, and the continuous email communications. As such, [Plaintiff] has pled breach of contract with sufficiency and Defendants' motion to dismiss should be denied." (ECF No. 36 at 8).

Defendants then re-assert the same argument under the language of the Subcontracting Agreement in their reply given Plaintiff's clarification. The Subcontracting Agreement provides that:

> Qualivis will invoice each [at-issue hospital or 'Client'] for the services performed pursuant to this Agreement based on the time entries and charges properly recorded and submitted by [a temporary healthcare provider or 'Candidate'] and [Plaintiff] and approved by the Client. Invoices to the Client shall be submitted on Fridays on a weekly, bi-weekly or monthly basis depending on the Client's payment terms, with invoices payable to Qualivis. Qualivis will only be obligated to pay for services and time of Candidates to the extent such services are approved and paid for by Client . . .
>
> Qualivis shall pay [Plaintiff] for the services approved and paid for by the Client (less the applicable Service Fee) within fifteen (15) days of receipt of such payments from the Client[.]

(ECF No. 28-6 at 6–7). According to Defendants, Plaintiff still fails to plausibly allege under the Subcontracting Agreement that (1) MDH approved the services underlying Plaintiff's breach of contract claim and/or (2) MDH paid Qualivis for the services provided. (ECF No. 41 at 6).

The Court will refrain from dismissing Plaintiff's Amended Complaint on the additional ground that it fails to plausibly allege all conditions precedent. Federal Rule of Civil Procedure 9(c) mandates that "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition

13

precedent has occurred or been performed, a party must do so with particularity." This Court has also recognized that "In a contract dispute, plaintiffs are not required to expressly plead satisfaction of a condition precedent to allege a breach of contract claim—an allegation is sufficient if it alleges that the claimant 'has at all times performed all its proper and legitimate duties and obligations under its contract.'" *U.S. for use & benefit of Tusco, Inc. v. Clark Constr. Grp., LLC*, 235 F. Supp. 3d 745, 753 (D. Md. 2016). Further, "failure to satisfy a condition precedent is ordinarily considered an affirmative defense, and an affirmative defense typically is not considered at the motion to dismiss stage unless the facts necessary to establish it are available on the face of the pleadings." *SH Franchising, LLC v. Newlands Homecare, LLC*, No. CV CCB-18-2104, 2019 WL 356658, at *5 (D. Md. Jan. 29, 2019) (cleaned up) (quotations omitted). Here, Plaintiff pled that it satisfied all conditions precedent, making Plaintiff's general allegation regarding such permissible under Rule 9(c) albeit not entirely specific. The Court therefore declines to dismiss the Amended Complaint on the ground that it fails to plausibly allege all conditions precedent.[5]

### D. Plaintiff's Unjust Enrichment Claim in Count II is Dismissed to the Extent That There Exist Enforceable Contracts Regarding Plaintiff's Claims

With regard to Count II, Defendants seek dismissal of Plaintiff's unjust enrichment claim because (1) it is facially contradictory in light of Plaintiff's recognition of the various contracts between the parties supporting its claims; (2) such a claim is precluded against CRP and Qualivis

---

[5] Defendants similarly argue that Plaintiff's Amended Complaint should be dismissed for lack of ripeness because Plaintiff "has not—and cannot—set forth any facts that might suggest that said conditions [precedent] were ever satisfied. As such, its claims are, at best, speculative and contingent on some future uncertainty; namely, whether MDH will issue payment to Qualivis for the services provided by [Plaintiff], thereby triggering Qualivis' obligation to issue payment to [Plaintiff]." (ECF No. 28-1 at 20–21; ECF No. 41 at 13–15). However, the Court disagrees with Defendants regarding whether Plaintiff has adequately pled satisfaction of all conditions precedent for the preceding reasons. And to the extent that Defendants argue that Qualivis' obligations to pay Plaintiff are contingent on some *future* uncertainty, the Court does not read Plaintiff's Amended Complaint as seeking redress for payments yet to become due and owing to Plaintiff under any of the relevant contracts. Rather, Plaintiff's Amended Complaint alleges generally that Defendants have already failed to pay Plaintiff for services provided pursuant to the relevant contracts despite Plaintiff's continuous provision of medical personnel. The Court therefore declines to conclude at this time that Plaintiff's claims are not ripe.

given their existing contractual relationship; and (3) such a claim is precluded against Aya Healthcare because "the subject matter of the claim centers upon contracts to which Aya was not a party, and [Plaintiff] cannot show that Aya was unjustly enriched as a result of [Plaintiff's] contractual relationships with CRP and Qualivis." (ECF No. 28-1 at 16–17). "In Maryland, a claim of unjust enrichment is established when: '(1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return.'" *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576, 597–98 (D. Md. 2019) (quoting *Benson v. State*, 389 Md. 615, 651–52 (2005)). Unjust enrichment is often asserted in conjunction with breach of contract claims as a quasi-contractual argument in the alternative, which is generally permissible. *See, e.g.*, *Swedish Civ. Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002). However, "no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Id.* (quotation omitted); *see also Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96–100 (2000) (collecting Maryland cases and affirming the principle that "It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties" and dismissing unjust enrichment claim where there "was an express contract between the parties that controlled this subject matter"). It follows that a quasi-contractual claim in this context may be asserted as an alternate pleading theory only "where the existence of a contract concerning the subject matter is in dispute." *Swedish*, 190 F. Supp. 2d at 792; *see also Transamerica*, 401 F. Supp. 3d at 598 ("Notably, 'a plaintiff is not barred from pleading [quasi-contractual] theories in the alternative

15

where the existence of a contract concerning the subject matter is in dispute.'") (quoting *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 678 (D. Md. 2013)).

Here, nearly all of Plaintiff's claims revolve around express contracts that both parties set forth as covering the subject matter of this dispute. As noted above, Plaintiff provided in its opposition that CRP (and later) "Qualivis and Aya Healthcare were in fact obligated to pay [Plaintiff] for services performed under the Subcontracting Agreement, the Client Term Sheet, and the continuous email communications." (ECF No. 36 at 8). Plaintiff asserts on this issue that "Defendants cannot have it both ways: they cannot dispute the existence of a contract in one paragraph and then argue that there is a controlling contract that bars recovery under a theory of unjust enrichment." (ECF No. 36 at 9). The Court does not agree that Defendants have done so. Defendants' motion does not argue that either the MDH Emergency Contract, Subcontracting Agreement, or client term sheet do not exist or are otherwise invalid. Rather, Defendants argue that Plaintiff's Amended Complaint insufficiently pled that Defendants breached those contracts given the signatories thereto and certain conditions precedent therein. Neither party contests the existence or validity of those agreements, but rather offers competing arguments on whether, in light of those agreements, Defendants breached any obligations owed to Plaintiff. Any remedy based on a supposed breach of the MDH Emergency Contract, Subcontracting Agreement, or client term sheet must therefore be limited to a breach of contract remedy and Plaintiff's Amended Complaint is dismissed to the extent it alleges otherwise.[6]

However, the parties do contest the existence of valid contractual obligations formed between them pursuant to the purported "continuous email communications." Specifically,

---

[6] Given the Court's explanation *supra* regarding the ambiguity of Plaintiff's Amended Complaint, this same conclusion would apply to any alleged breaches of the April 2017 Personnel Agreement and the April 2020 Special Emergency Personnel Agreement, although it is not entirely clear from the Amended Complaint whether Plaintiff asserts that any Defendant(s) breached those agreements.

16

Plaintiff's Amended Complaint asserts that Defendants breached their contractual obligations to Plaintiff by failing to perform under "continuous email communications" between the parties after the Subcontracting Agreement was executed. *See* (ECF No. 25 at 5–6; ECF No. 36 at 7–8). In their motion, Defendants claim not only that Plaintiff's Amended Complaint sets forth insufficient details regarding those supposed email agreements (which the Court previously agreed with), but also that "even if it had, [Plaintiff] failed to sufficiently demonstrate that such communications formed a valid contract." (ECF No. 41 at 8–9). The Court therefore finds that there exists a dispute regarding the existence of a contract concerning the subject matter of the alleged email communications and will permit Plaintiff's unjust enrichment claim to proceed solely on that ground. However, Plaintiff must still address the above identified deficiencies regarding those allegations, namely that Plaintiff's Amended Complaint insufficiently sets forth details regarding those agreements/communications and how or when Defendants breached any obligations thereunder. These missing details are particularly important to clarify Plaintiff's unjust enrichment claim, as Plaintiff's Amended Complaint asserts that Defendants impermissibly benefitted from Plaintiff's services "In 2021 and 2022," but also declares that Defendants paid for Plaintiff's services as late as May 2023. (ECF No. 25 at 7, 8).

### E. The Court Will Dismiss Plaintiff's Amended Complaint Without Prejudice and With Leave to Amend

Finally, Defendants argue that the above dismissals should be with prejudice because Defendants raised the above deficiencies in their prior motion to dismiss, which Plaintiff's Amended Complaint failed to incorporate. (ECF No. 28-1 at 21). "It is within the district court's discretion" to determine whether any dismissal pursuant to Rule 12 is with or without prejudice. *Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985); *see also Virella v. M.B.G. Enterprises Inc.*, No. CV RDB-21-1844, 2022 WL 36452, at *2 n.3 (D. Md. Jan. 4, 2022)

17

("The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court.") (quotation omitted). Federal Rule of Civil Procedure 15 further states that, once a party may no longer amend their pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court *should freely give leave when justice so requires*." Fed. R. Civ. P. 15(a)(2) (emphasis added). While Defendants may have raised these issues in its prior motion to dismiss, Plaintiff did, in fact, oppose that motion before filing its Amended Complaint. (ECF No. 24). Plaintiff apparently believed its original pleading to be sufficient given the arguments in that opposition and the Court did not adjudicate the merits of that motion before Plaintiff filed its Amended Complaint. Although it may have been best practice to incorporate some of those criticisms into the Amended Complaint, Plaintiff will not be admonished permanently for choosing to instead exercise its ability to amend under Rule 15 on the (presumably reasonable) belief that the substantive allegations in its original Complaint could withstand a motion to dismiss.

## IV.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 28) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that Count I is dismissed for failing to provide sufficient plausible facts supporting Plaintiff's claim for breach of contract against Defendants. Count I is also dismissed to the extent that Plaintiff's Amended Complaint asserts breach of contract claims against individual Defendants based on contractual agreements to which any individual Defendants were not a party to and without novation. Further, Count II is dismissed to the extent that Plaintiff may not pursue alternative claims of unjust enrichment stemming from alleged breaches of the MDH Emergency Contract, Subcontracting Agreement, client term sheet, Personnel Agreement, or Special Emergency

Personnel Agreement. Count II may proceed to the extent that it asserts that Defendants violated subsequent contractual obligations entered into via email communications after executing the Subcontracting Agreement, provided that Plaintiff provides sufficient factual allegations supporting the existence and breach of those contractual obligations as described above.

Finally, these dismissals are without prejudice and with leave to amend. Plaintiff shall file a Second Amended Complaint within twenty-eight (28) days from the date of this Memorandum Opinion and Order, at which time Defendants shall file an answer or other responsive pleading (including another motion to dismiss if appropriate) within twenty-one (21) days therefrom.

Date: <u>July 11, 2024</u>                             /s/
                                                           J. Mark Coulson
                                                           United States Magistrate Judge