IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ABBELLA GROUP HEALTHTECH,** | * | |
| **LLC d/b/a ABBELLA MEDICAL** | * | |
| **STAFFING,** | * | |
| | | |
| *Plaintiff,* | * | |
| | | |
| v. | * | Civil Case No: 1:24-cv-00331-JMC |
| | | |
| **QUALIVIS, LLC, et al.,** | | |
| | * | |
| *Defendants.* | | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff, Abbella Group Healthtech, LLC, doing business as Abbella Medical Staffing ("Abbella"), initiated the present lawsuit on February 1, 2024. (ECF No. 1). The Third Amended Complaint is the operative complaint in this matter, wherein Plaintiff asserts four counts against Defendants Qualivis, LLC, et al. ("Qualivis") and Aya Healthcare, Inc. ("Aya Healthcare"): three breach of contract claims (Counts I, II, and III) and one claim for unjust enrichment (Count IV), stemming from Defendants' alleged failure to pay Plaintiff for providing medical staffing services during the COVID-19 pandemic. (ECF No. 70).[1] Presently pending before the Court is the Defendants' Motion to Compel certain discovery responses and Plaintiff's Motion to Compel certain information from the Qualivis portal. (ECF No. 99-1). The motions have been fully briefed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth herein, the Defendant's Motion to Compel and for Attorney Fees is GRANTED in part and DENIED in part and Plaintiff's Motion to Compel is GRANTED.

---

[1] Plaintiff's Second Amended Complaint additionally named Chesapeake Registry Program, Inc. ("CRP") as a Defendant. (ECF No. 49). For procedural reasons discussed in greater detail at the motion to dismiss stage, Plaintiff removed CRP as a party in its Third Amended Complaint. (ECF No. 70).

## I.   BACKGROUND

Abbella is a medical staffing agency, based in Baltimore, Maryland, that specializes "in placing travel nurses and other medical health professionals in facilities requiring additional medical staff." (ECF No. 70 at 3).  Chesapeake Registry Program, Incorporated ("CRP"), "is a Maryland corporation created by the Maryland Hospital Association in 2004 to assist hospitals and health systems with staffing through nursing agencies such as Abbella." *Id.* at 2. Qualivis and Aya Healthcare are Delaware corporations which contract with the state of Maryland to provide health professional services. *Id.* at 2. Qualivis is a wholly-owned subsidiary of Aya Healthcare, and on March 1, 2021, Qualivis acquired CRP. *Id.* at 4.  Plaintiff alleges the Maryland Department of Health (the "MDH") and CRP formed the "MDH Emergency Contract" in this matter on April 30, 2020, under which CRP would provide an online platform for health care providers to request temporary medical staffing from various agencies to cover staffing shortages during the COVID-19 outbreaks. *Id.* at 4.  At issue are four writings that Plaintiff alleges set forth the terms of the formal contracts between Abbella and Defendants, the scope of their terms, and the obligations of the parties under the agreements.  *Id.* at 5.  Ultimately, Abbella alleges Defendants failed to pay Abbella for the services its individual medical workers provided in violation of the operative agreements. *See generally id.*

In a Memorandum Opinion and Order dated August 22, 2025 (ECF No. 79), the Court denied the Defendants' joint motion to dismiss the Third Amended Complaint, which now governs this litigation.  Defendants filed an answer on September 12, 2025.  (ECF No. 15).  The Court recognized that Counts I and II were based on certain writings between the parties, but that Count III and Count IV were plead in the alternative to the extent Defendants contend that some of the claims fall outside those written agreement.  (ECF No. 79 at 14).  In particular, Count III argues

that the parties' extensive communications regarding duty assignments could, taken together, form contracts between the parties.  (ECF 70 at 19).

Thereafter, the Court issued a scheduling Order, and most recently granted a motion to extend the scheduling order on July 6, 2026.  (ECF No. 98).  Expert disclosures begin October 1, 2026 and the current discovery deadline is December 17, 2026.  (ECF No. 97 at 2).[2]

On July 22, 20266, the parties alerted the Court to the existence of a discovery dispute. The Court notes that although the parties did comply with the process set forth in Local Rule 104.8, the Court issued an Informal Discovery Memorandum on September 15, 2026, that specifically replaces that paper-intensive process with a much more streamlined approach, asking counsel to "not file any discovery motions until [the Court's informal] process has been followed and [the Court] advise[s]…that formal briefing is necessary." (ECF No. 82).  Although it would not be the Court's usual practice to consider the extensive filing at ECF No. 99 under these circumstances, the Court recognizes the parties' good faith effort to comply with the Local Rules and will consider the formal briefing as drafted in this instance.  The parties are reminded to follow the procedures set forth in the Court's Informal Discovery Memorandum should any future disputes arise.

## II.    ANALYSIS

Defendants move to compel various discovery responses.  (ECF No. 99-1 at 1-2). Specifically, they ask for an order compelling (1) the answering of contention interrogatories and production of all documents and communications that Abbella contends form the basis of the contracts (Int. 11 & 22; RFP. 12 and 21); (2) supplementation of responses to Defendants' second set of requests for production Nos. 2 and 3; (3) answering Interrogatory Nos. 8 and 12 regarding a

---

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

3

description of services for which Abella seeks payment,; (4) to the extent that Abbella relies on the FRE Summary[3] in its discovery responses, appropriate correction and supplementation of that summary; and (4) Identification of the persons who participated in or authorized the Agreement(s) forming the basis of Count III on behalf of Abbella, (Int. 14).  (ECF No. 99-1 at 1-2).  Defendants also ask for expenses and fees incurred in bringing the Motion under Federal Rule of Civil Procedure 37(a)(5)(A).

Abbella has filed its own Motion to Compel, requesting an order compelling response to Request for Production Nos. 15, 16, and 17 that relate to documents allegedly available from Defendants' portal, similar to those that Defendants have already produced in related litigation with MDH.  (ECF No. 99-13 at 4-5).

In sum, Defendants focus primarily on having Abella identify those documents from its production that support Count III of its Third Amended Complaint and that support its request for payment, as well as supplementing its production to the extent that such documents have not yet been produced.  In response, Abella largely relies on its 44-page FRE Summary, and otherwise points to its document production to argue that the burden of identifying such information is the same for both parties, particularly given, invoking Rule 33(d).  Defendants represent that at a meet and confer, "Abbella maintained its position that it had complied with Fed. R. Civ. P. 34(b), because it 'ha[d] produced documents according to the structure Abbella used to store its documents in the ordinary course of business and in a reasonable usable form,' and that it was 'not

---

[3] Abbella provided a Rule 1006 "Summary of Voluminous Records."  (ECF No. 49-13 (the "FRE Summary")).  The summary claims damages of at least $5,275,458.99. The summary identifies various documents by bates number, date, vaccination site, entity contracting for personnel, hours worked, invoice date, and the alleged corresponding unpaid balances.  *See id.*  Defendants do not necessarily challenge the concept of Plaintiff's utilizing a summary in response to certain discovery requests, but do challenge the accuracy and completeness of the FRE Summary provided relative to certain discovery requests.

required additionally to organize and label the documents it produces to correspond to categories in Defendants' various discovery requests for documents.'" (ECF No. 99-2 at 12). Defendants continue, "[Abbella] maintained that Defendants had received document production (now totaling 22,379 pages) and that they could find documents corresponding to Abbella's [FRE Summary]…and that it had no further obligation to clarify or identify the 'Emails and Communications' forming the basis of Count III." *Id.* It appears as though there is now a concern that there will be "hundreds upon hundreds of different communications" yet to be produced, that Abbella has misrepresented the scope of its compliance with the discovery rules, and that Defendants have an obligation to produce information from the Qualivis portal. Abbella's Opposition makes clear that the dispute is not as straightforward as Defendants present, and the Court will address each argument in turn, starting with Defendant's Motion to Compel.

> **A.** **The "Emails and Communications" that Form the Basis of the Count III Contracts and supports its claims for payment (Int. 8, 11, 12, 22; RFP 12 & 21)**

The instant discovery dispute primarily focuses on whether Abbella has an obligation to produce the identifying information Defendants have requested for each of the communications and documents that Abbella alleges form the contracts at issue and in what format (i.e., by Interrogatory response, by FRE Summary, etc.). At the motion to dismiss stage, this Court recognized that doing so would be an arduous task. (ECF No. 79 at 14). The discovery responses at issue under this portion of the dispute are as follows:

> Interrogatory No. 11. Identify the Agreement(s) that You contend form the basis for Count III of the Complaint, including the parties to the Agreement(s), the date(s) of execution, the method(s) of formation, and the entity(ies) contractually responsible for payments for the Services provided.

> Interrogatory No. 22. Identify and Describe all Communications (including emails, portal entries, or letters) in which Defendants allegedly agreed to pay You for Services or acknowledged any payment obligations.

5

Request for Production No. 12.  Each Agreement(s) that You contend form the basis for Count III of the Complaint.

Request for Production No. 21.  All Documents and Communications identified in, or otherwise relied upon while making, the "Rule 1006 summary" referenced in the Complaint.

(ECF No. 99-4, 99-5).  The Court's reasoning below applies both to these requests as well as Defendants' concerns regarding Abella's the FRE Summary.

Abbella emphasizes that it has already produced hundreds of communications and documents that are responsive to the requests and has identified many of them by bates number in its FRE Summary.  (ECF No. 99-13 at 2).  Following a sample entry from that summary:

*Abbella Group Healthtech, LLC d/b/a Abbella Medical Staffing v. Qualivis, et al.*
Case No. 1:24-cv-00331-JMC (D. Md.)
Plaintiff's Summary of Voluminous Records - Fed. R. Evid. 1006

| Emails & Portal Communications Forming Contracts | | Entity Contract-ing for Personnel | Dates of Work | Weekly Worked Hours (acceptance confirmed) | Invoice Date | Balance |
|---|---|---|---|---|---|---|
| | | | | | **Total Unpaid Balance: $5,275,458.99** | |
| **M&T Bank Stadium** AGH_00005164- AGH_00005167; AGH_00005211; AGH_00005367- AGH_00005368; AGH_00005370 | **M&T Bank Stadium** 2/19/2021 2/20/2021 3/5-6/2021 4/20/2021 (extension through 7/15/2021) | Aya & Qualivis | 3/7/2021- 3/13/2021 | AGH_00000036; AGH_00000039- AGH_00000040 | 3/18/2021 | $1,920.00 |
| **Regency Furniture Stadium** AGH_00005160- AGH_00005161; AGH_00005163; AGH_00005176- AGH_00005177 | **Regency Furniture Stadium** 2/22/2021 3/3/2021 3/22/2021 & 3/24/2021 (additional work) | | | | | |

Abbella represents it "continues to search for additional documents, including communications, that support its claims and intends to update its FRE 1006 Summary."  *Id.*  Abbella further

emphasizes that much of the information Defendants seek "resides within its Portal or in documents that it has submitted and relied on in another litigation." *Id.* The precise boundaries of what information Defendants challenge as unproduced and what information Abbella alleges is already in Defendants' control is unclear. Accordingly, the Court's analysis strives to achieve the appropriate balance between efficiency and the proper scope of production in view of a limited record.

Review of the parties' communications sheds further light on what has actually been exchanged. In response to a June 4, 2026 email from Defense counsel, Plaintiff's counsel provided the following response:

> We don't dispute the concept of contention interrogatories, but Defendants know Abbella's contentions very well at this point. The detailed allegations of the Second Amended Complaint, individual identification of the primary contracts governing the relationship, and as all parties know, the types of communications that all parties engaged in to agree on assignment specific terms, all form the basis of Count III. Additionally, in an unusual move at the pleading stage, Abbella assembled many documents that form the basis for Count III, compiled in one bates numbered production, and summarized by work dates, locations, with bates references to the documents that specify the healthcare worker, hourly rate, hours worked, and total amounts owed. Therefore, we have already done much more than simply refer to the document production as a whole.

> We've also produced additional email evidence regarding assignment specific terms and in which Qualivis/Aya make offers that Abbella accepts, and let you know that more will be coming. The identification of this category of document is sufficient for Defendants to locate them as readily as us. Yet we read Defendants' demands to list by bates number every single additional email, or some other manner of identifying information on Defendants' own portals, by which assignment specific terms were set. This will be hundreds upon hundreds of different communications.

> …

> We welcome another phone call to discuss a narrower solution. If the ask truly is to list every single email setting an assignment specific term/offer/acceptance by bates number, we think that's disproportionate and unjustified.

(ECF No. 99-10 at 2).

Defendants also seek a similar supplementation to Interrogatories 8 and 12 that essentially seek a description of the services for which Abbella seeks payment. Abbella also relies on its FRE Summary and on its interpretation of Rule 33(d), pointing to its document production.

The Court concludes Abbella must do more. The Court views Rule 33(d) and Rule 34 as related. Stated differently, compliance with Rule 34(b)(2)(E) as Abbella claims here does not automatically satisfy Rule 33(d)(1)'s requirements. Rule 34(b)(2)(E) guards against an unorganized (intentionally or otherwise) production; Rule 33(d)(1) further requires that where a party responds to an interrogatory by pointing to its document production, such party must also specify the records within that (otherwise compliance) production "in sufficient detail to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). Here, Abbella has advanced an alternative theory of recovery that is not based on one specific writing but instead seeks to weave together a completed contract from various documents and correspondence between the parties. Under such circumstances, it critical that Defendants understand what specific communications and documents come together to form this contract that Abbella asserts. In so doing, the Court is not imposing any more of a burden than Abbella would ultimately have at trial. To be clear, the Court endorses Abbella's use of a summary such as the FRE Summary, but such a summary must be both comprehensive and accurate, rather than merely representative of examples of some documents and communications that might give some evidence to some transaction. To the contrary, if Abbella is going to rely on such a summary, it must reference all of the documents and communications that Abbella contends entitle it to the compensation it is claiming.

If Abbella has already produced all such documents and communications, it needs to specifically reference them in the FRE Summary by Bates number. If Abbella intends to produce

8

additional documents, they must similarly be incorporated.  Abbella bears the risk of any inaccuracies in the FRE Summary (i.e., if the documents referenced do not, in fact, support the claims/damages, Abbella could risk not recovering for such claims/damages).  If Abbella is not relying on the FRE Summary for some of its responses it must nonetheless identify responsive documents in its production by Bates number or Bates range.  Additionally, any such supplementation should occur within 30 days[4] of the date of this order.[5]

### B.    Request for Production Nos. 2 and 3

Requests for Production Nos. 2 and 3 ask Abbella to produce for each invoice supporting an alleged unpaid balance of $5,275,458.99, documentation substantiating the specific damages figure.  (ECF No. 99-2 at 23).  For example, they ask for a clinician provider name, shift date, hours worked, rate, total charge for the shift, location worked, and so on.  *Id.* As Defendants argue, Plaintiff has calculated its damages figure to the cent yet has not identified or otherwise categorized the documents that support that figure.  *Id.* Correspondence shows Abbella intend to rely upon the FRE Summary in support of its damages claim.  Specifically, Defendants argue that the FRE Summary fails to identify the invoice that contains the transaction supporting a claim for an unpaid balance.  Defendants continue by pointing to the shortcomings they have identified in the documents identified by the FRE Summary and various evidentiary deficiencies, such as a lack of an invoice or check in or check out time.

Again, the Court is persuaded that the relevance of documents giving rise to a claim that exceeds $5,000,000 in damages are necessary for Defendants' ability to defend themselves in this

---

[4] The Court will likely grant reasonable requests for extension assuming adequate effort has been made.  To the extent that further modification of discovery deadlines is required as a result, the parties should propose them.

[5] To the extent Abbella intends to rely on documents not yet in its position (e.g., the documents Abbella seeks from Defendants in discovery that have not yet been produced), it should timely supplement once those documents have been received.

case and outweighs the burden of the production.  Abbella shall provide any documents in its custody, possession, or control that are responsive to Request for Production Nos. 2 and 3 within 30 days.  To the extent part of its response is dependent on obtaining documents from Defendants, it shall timely supplement once such documents are received.  To the extent it wishes to incorporate those documents into its FRE Summary, it is free to specifically reference them there.

Therefore, to the extent that Abbella has access to invoices it believes should be part of its damages, Abbella should produce and identify them in a manner consistent with Section II.A.

### C.    Abbella Will Supplement its Answer to Interrogatory No. 14

In its brief, Abbella indicated that it will supplement its answer to Interrogatory No. 14 to include the 182 healthcare workers and Abbella's administrators who facilitated the healthcare workers' acceptance of specific shifts.  (ECF No. 99-13 at 3).  Therefore, the Court finds that this dispute is moot.  Such supplementation should occur within 30 days of the date of this order.

### D.    Plaintiff's Motion to Compel

Plaintiff's Request for Production No. 15 asks for all contracts, agreements, papers, or documents related to Qualivis's relationship with MDH.  Request for Production No. 16 asks for all invoices or reverse invoices sent from Defendants to Abbella in connection with Abbella's facilitation of staffing at COVID-19 testing and vaccination sites.  Request for Production No. 17 asks for all documents relating to Defendants' requests for Abbella to provide medical professionals to COVID-19 testing and vaccination sites.

First, concerning Request No. 16, the Court reiterates its holding that Abbella should produce those invoices it has in its possession that Abbella alleges are unpaid.  To the extent that Abbella alleges invoices of certain dates or can identify them in some other clear manner but does not have possession of them, the Court will require Defendants to produce that information within 30 days of the date of this order.

10

It is unclear why Defendants have not produced the documents responsive to Request for Production No. 15 or 17.  The Court will require Defendants to make these productions within 30 days of the date of this order, but to the extent that Plaintiff intends to rely on these documents in support of its argument that those communications or documents formed the Count III contracts, Plaintiff must so indicate consistent with Section II.A.  Plaintiff may use whatever document identifiers Defendants have applied to its production and need not re-organize the documents Defendants produce under these requests, so long as Abbella has clearly identified that any of those documents are part of an allegation of a formed contract.

Therefore, Plaintiff's Motion to Compel is GRANTED subject to the requirements herein.

### E.    The Court will Not Impose Sanctions

Seeing no evidence of bad faith, the Court is not inclined to find that Abbella has engaged in any conduct that justifies a fee award.  Defendants sent correspondences demanding a supplement involving considerable work and time three times in a matter of weeks.  The Court is not persuaded that Abbella's assertion that they have already provided the requested information—especially in view of the FRE Summary already provided—constitutes sanctionable action that necessitated a thirty-page motion and nearly two hundred documents in support.  For example, review of the email communications in context makes clear that Abbella did not indicate or "strongly suggest" that it has withheld hundreds upon hundreds of different communications—Abbella stated that to supplement responses to list by bates number every single additional email would require hundreds of different communications.  The Court does not find this to be credible evidence of bad faith or an intentional misrepresentation on Abbella's part on this record.  Moreover, the Court has essentially granted both motions.

Finally, as to the 30-day deadlines established herein, the Court reiterates that reasonable requests for extension will be granted to both parties, assuming diligence in attempting to comply, and encourages the parties to work cooperatively.  Additionally, to the extent either party concludes that a reasonable extension of the current schedule is required, the Court is likely to grant such extension and encourages the parties to request same by joint motion where possible.

## II.   CONCLUSION

For the reasons stated, it is this 28th day of July 2026, by the United States District Court for the District of Maryland, hereby ordered:

1) Defendants' Motion to Compel is GRANTED to the extent indicated herein, and is otherwise DENIED;

2) Plaintiff's Motion to Compel is GRANTED to the extent indicated herein; and

3) Any supplementation called for herein shall take place within thirty (30) days of the date of this order, subject to extensions agreed to by the parties or granted by this Court upon showing of reasonable diligence in complying.

4) To the extent either party seeks a reasonable extension of the remaining discovery order deadlines, they should confer regarding same and ideally propose a joint motion for modification for the Court's consideration.  SO ORDERED.

Dated: July 28, 2026                                        _____/s/_____

J. Mark Coulson
United States Magistrate Judge

**APPROVED**

12